W. W. CORNETT, Defendants in Error, v. HOWARD S. BEST et al., Plaintiff in Error.

Kansas City Court of Appeals, November 21, 1910.

1. COVENANTS MUTUAL: Tender.   Where mutual covenants are to be performed contemporaneously the party intending to sue the other must first put such other in default by tendering performance of his own covenants and receiving the other's refusal to perform his.

2. ———: ———: Repudiation of Contract. If a party entitled to a tender repudiates the contract and so states to the other party, that other party is excused from making a tender.

3. ———: ———: ———: Insolvency. Insolvency of a vendee who covenants to pay money upon the vendor making him a deed to land and presenting an abstract showing good title, will not excuse the vendor from making a tender of such deed and abstract.

4. ———: ———: ———: ———: Compromise. Where a vendee states to the vendor that he will be unable to perform his covenant to pay a part of the purchase price of land on the day agreed upon, but at the same time refuses to give up possession of the land and desires to enter into a negotiation for compromise and afterwards enquires for the deed and abstract, it fails to show a repudiation of the contract and does not excuse the vendor from making a tender of a deed.

5. ——————: ——————: ——————: ——————: **Abstract: Power of Performance.** An offer of a deed which does not describe or convey the land sold, and an offer of an abstract which does not show a good title, is not a tender. And though this offer was refused on the ground that the vendor had not the money to pay, it does not excuse the vendor from making a legal tender. An offer by the vendor and refusal by the vendee when the former has not the power of performance, is not a tender, nor does it excuse one.

6. ——————: ——————: ——————: **Liquidated Damages.** Where a contract of purchase provides that if the vendor furnishes an abstract on a certain day, showing a good title, and the vendee refuses to complete the purchase, the note given for cash payment shall be paid to the vendor as liquidated damages, such vendor cannot be allowed to recover on the note when the abstract did not show good tittle.

7. **REPLEVIN: Action: Right to Posession.** A party cannot maintain an action in replevin unless he is entitled to the possession of the property at the time he institutes the action.

8. ——————: ——————: **Return of Property: After acquired Right.** If a party has not the right to possession when he brings his action in replevin, yet if before trial he becomes entitled to possession, the defendant will not be allowed an order for a return of the property, though he defeats the plaintiff in the action on account of its being prematurely brought.

Error to DeKalb Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

REVERSED.

*Hewitt & Hewitt* for plaintiff in error.

(1) The matters of confession and in avoidance in plaintiff's reply was insufficient, and the defendant's motion for judgment on the pleadings should have been sustained. The conditions precedent to be performed by the plaintiff, were: First. The execution of a general warranty deed on or before the 1st day of February, 1907. Second: Plaintiff to furnish to the defendant an abstract showing a good, merchantable title to the real estate described in the mem-

oranda of sale. Boulware v. Crohn, 122 Mo. App. 571. Neither of these conditions were met by the plaintiff. It is fundamental before a person can recover upon any contract, he must plead and prove that he has duly performed all the conditions on his part. Plaintiff broke the contract on February 1, 1907. 3 Am. and Eng. Ency. Law (1 Ed.), p. 908; Sick v. Ins. Co., 79 Mo. App. 609; Howe v. Hutchinson, 105 Ill. 501. (2) This is not a suit for specific performance, and the argument of the authorities presented by the plaintiff at the trial are not in point; but it is a suit at law, in which an equitable answer is filed, praying for affirmative relief, such as cancellation and return of the note, and release of the mortgaged property. Plaintiff is seeking to have a forfeiture declared. The defendant pleads the various breaches on the part of the plaintiff, and the unconscionable conduct on his part, and prays for affirmative relief. Lincoln Trust Co. v. Nathan, 175 Mo. 44.

*William M. Fitch* and *K. B. Randolph* for defendants in error.

(1) Defendant had often expressed his inability to comply with his part of the contract of purchase. This was communicated to the plaintiff at the request of defendant, and for that reason the plaintiff did not make his deed and have his abstract compiled within the time mentioned in the contract, because it would have been a vain and useless thing for him to have made a deed and furnished the abstract when the defendant had stated positively that he could not make the payments for the land. (2) "When it is clear that a tender will not be accepted, it need not be made. Thus, a tender to one who announces in advance that he will not accept it is unnecessary." 28 Am. and Eng. Ency. Law (2 Ed.), 7, and case cited in No. 2. (3) "When one of the parties to a contract is unable

to perform his part, no tender of performance by the other party, who is ready and willing to perform, is necessary. Thus, where the vendor of goods is unable to deliver them the buyer may maintain an action for the breach of contract without having tendered the purchase price. And there need be no tender of a deed by the vendor when the vendee declares his inability to pay the purchase money; neither need the purchase money be tendered by the vendee when the vendor is unable to convey the land.'' 28 Am. and Eng. Ency. Law (2 Ed.), 9, and cases cited. (4) A tender is waived when it appears that the tender would have been made but for the evasion of the other party. 28 Ency. Law (2 Ed.), 10; Deichman v. Deichman, 49 Mo. 107. A party on appeal is restricted to the theory adopted in the trial court. Henry Co. v. Bank, 208 Mo. 209; Bragg v. Railroad, 192 Mo. 331; Sack v. Car Co., 112 Mo. App. 476; James v. Casualty Co., 113 Mo. App. 622; Matouseck v. Bohemian, etc., Union, 192 Mo. 588; Walker v. Railroad, 183 Mo. 453; Cobb v. Houston, 117 Mo. App. 645; Kilpatrick v. Wiley, 197 Mo. 123. (5) A case cannot be tried upon one theory in the trial court and on another theory in the appellate court. Williams v. Loban, 206 Mo. 399; Huss v. Bakery Co., 210 Mo. 44; St. Louis v. Contracting Co., 210 Mo. 491; Taylor & Sons Co. v. Railroad, 112 S. W. 59. (6) The contract in evidence in this case was one of forfeiture and not one of penalty. Morse v. Rathburne, 42 Mo. 594.

ELLISON, J.—This is a suit in replevin. The petition is in the usual form. The answer alleges that the claim of plaintiff to the property is founded on a chattel mortgage executed by defendant to secure the payment of a promissory note of one thousand dollars given by defendant to plaintiff in part payment of the purchase price of a farm plaintiff sold to defendant and that on account of the breach by plaintiff of that

contract, plaintiff is not entitled to recover and defendant is entitled to a cancellation of the note and mortgage.

In effect the reply admits the facts alleged in the answer except those relating to the breach of the contract of sale. Plaintiff alleges that the contract was broken by defendant and, further, pleads facts in support of his contention that defendant is estopped from interposing as a defense a breach of the contract by plaintiff. A jury was waived and the court heard the evidence introduced by plaintiff. Defendant demurred to that evidence, the demurrer was overruled, and defendant rested after offering some evidence on the issue of the value of the property replevined. No declarations of law were asked by either party except one asked by defendant in the nature of a demurrer to the evidence. The court resolved the issues in favor of plaintiff and gave him judgment as prayed.

In addition to this action in replevin, plaintiff sued defendant in the same court to foreclose the chattel mortgage. The two suits were docketed separately but were tried together on the same evidence. The court gave plaintiff judgment in the foreclosure suit for the full amount of the note less payments credited thereon and adjudged the foreclosure of the mortgage as prayed. In due course of procedure, defendant brought the cases here by writs of error. We shall cover both cases in this opinion.

On October 5, 1906, the parties entered into a written contract by which plaintiff sold a farm in DeKalb county to defendant, for $9600, and defendant agreed to pay the purchase price as follows: $1000 cash, and $4600 on or before February 1, 1907. The remainder, $4000, was the amount of a deed of trust on the land, the payment of which defendant assumed. The contract provided: "If said abstract shows a good title and the second party fails or refuses to pay balance of purchase price as above set forth, then the first pay-

ment above shall become forfeited unto said first party as their liquidated damages under this contract, and this contract shall become null and void."

Defendant did not have the money to make the "down payment" of $1000, and plaintiff took his promissory note for that amount and a chattel mortgage on the property in controversy to secure the payment of the note. The sale of the farm was not consummated, and the trial court found the issues for the plaintiff.

The reason for the trial court's conclusion does not appear in the record. But from the brief's of counsel we assume it was that although a vendor before bringing an action founded upon a contract for the sale of real estate should first show a tender of performance on his part, in this case making a deed and abstract of title and tendering them, yet that a tender in this instance became unnecessary and useless from the fact that defendant was himself unable to perform and repudiated the contract. The defendant assails this position and insists that, as a matter of fact, it is not supported by the record. We believe defendant's view is well taken.

The law is that although mutual covenants are to be performed contemporaneously, yet it is necessary for the party intending to sue for enforcement of the contract, to put himself in position to complain of the other party by showing such other party's default, and to do this he should make a tender of performance of those things he was to do. [Curtis v. Sexton, 142 Mo. App. 179; Davis v. Watson, 89 Mo. App. 15; Denny v. Kile, 16 Mo. 450; Turner v. Mellier, 59 Mo. 526.]

But, in this connection, the law relieves the moving party of the duty to make a tender, if it is shown that the other party would refuse it, since, as it is frequently expressed, the law does not require the doing of a useless thing. [Curtis v. Sexton, supra.]

The fact that the other party, by whom money was to be paid, is insolvent, as stated by counsel, will not,

on this ground, excuse a tender to him. Since it cannot be known from what source a person, though not liable to execution, might obtain the money. This may be illustrated by the law which makes necessary, in order to hold an indorser on a negotiable promissory note, that demand be first made of the maker and the endorser notified of the default. The fact that such maker is insolvent will not excuse the want of demand. The law recognizes that he may have unknown ways of meeting the note and states the instance that his friends or relatives may pay it. Of course, if a party otherwise entitled to a tender has put it out of his power to perform on his part, as for instance, by conveying or consuming the property which he was to deliver to the other party, that would excuse a tender to him, since he has, by such act, for all practical purposes, repudiated or abandoned the contract; and repudiation and abandonment will excuse a tender. [Curtis v. Sexton, supra.]

If there is any ground upon which plaintiff's failure to tender the deed and abstract of title on the first of February can be excused, it is that defendant had repudiated the contract for the reason that he had not the money which he was to pay plaintiff upon receipt of the deed. It is quite true the evidence shows that he said he did not have the money and that he requested plaintiff's agent to so write to the plaintiff, but at the same time the entire evidence clearly shows that this was not intended as a finality, for it was accompanied by a proposition for a compromise, and he likewise refused to surrender the possession which was given him when the sale was made. More than that, on February 1st, the day the deed and abstract were to be delivered by plaintiff and the money paid by defendant, he went to the office of the plaintiff's agent and asked for the deed and abstract. The agent did not have them and as a matter of fact they had not been

made out. Again, two weeks later, defendant in company with plaintiff's son, went to the bank where he had been told the abstract could be found, and enquired for it, but it was not at that place. During all this time he remained in possession of the farm and, according to the evidence in plaintiff's behalf, he refused to give it up. These considerations lead to the undoubted conclusion that he had not abandoned or repudiated the contract. It does not affirmatively appear why he wanted the deed and abstract on February 1st and afterwards again wanted the abstract, but it is only reasonable to assume that he was not considering that plaintiff was absolved from the duty of having them made out.

But plaintiff, in effect, claims that if defendant's conduct did not justify plaintiff in failing to tender the deed and abstract, that he did afterwards, on February 22d, duly tender both papers. It appears that he did not make out a deed until February 18th, nearly three weeks after he should have done so, and that then he came back from Kansas and went out to the farm where he met defendant and the latter conversed with him "in regard to what I would take to let him out and close it up and return his papers to him and he return the farm and mules to me." A few days after this, on February 22d, he and another person met defendant when he offered the deed and abstract to him and defendant refused to take it. When plaintiff was asked what defendant said, he answered that he could not state positively what he did say. The other man, whom plaintiff had as a witness to the tender, stated that he declined the papers, but would not say. what he said, though he thought he said that "it was not necessary, or he did not care for it, or the deal was off." Neither of these witnesses state what defendant said more than the mere remark quoted, but that he did say more is apparent. It would be unfair and unjust to allow testi-

mony of that incomplete and inconclusive character to overcome the entire evidence showing defendant had not given up, but was holding on to the farm and wanting to compromise.

But in addition to this, it indisputably appeared that plaintiff was not able to make a tender at that time, and that his offer was without anything to rest upon. In such circumstances he cannot claim a tender. [Hunt on Tender, sec. 428.] His deed did not convey the land sold and described in the contract, nor did the abstract purport to show the title to the land sold, a part of it being altogether different land. The abstract was further defective in that several conveyances appeared to be signed by one person and did not disclose whether he was single or married. And in addition to this, it showed the mortgage on the land, which defendant was to assume, was for $4200, instead of $4000, as stipulated in the contract of sale.

While it is true that a mere inadvertent error in a deed or abstract which may be straightway corrected when attention is called to it, will not invalidate a tender (Deichmann v. Deichmann, 49 Mo. 107; Burns v. Freling, 98 Mo. App. 267), yet where the errors are of the character here shown it would be going too far to say they were not sufficient to invalidate the claim of tender made by the plaintiff. There is no reasonable ground to say that plaintiff believed his deed was proper and that his abstract showed a merchantable title. In the absence of explanation we must suppose he knew he was going through a form which did not have substance behind it. When such is the case there can be no tender, since the party claiming it is himself at fault. [Hunt on Tender, supra.]

It appears that after the foregoing matters had transpired plaintiff obtained possession of the farm. It also is true that in the reply which he filed to defendant's answer, in which answer and reply the matter of

the sale of the farm as herein set forth is disclosed, he does not make tender of a deed or abstract. He does not offer to cure the defects in his deed and abstract, if they could be cured. In short, having failed to perform his part of the contract so as to entitle him to maintain the action on the note, he nevertheless, notwithtanding he has gotten the farm back, seeks to recover a part of the purchase money, thereby getting both land and money.

It will not avail plaintiff anything to return to the terms of the contract of sale with the statement that it entitled him to this part of the purchase price as liquidated damages. For, it will be seen that that contract is *conditioned* that the "abstract shows a good title," and we have shown that it did not and that none was afterwards tendered when the matter was brought into the case by the pleadings. [Davis v. Watson, supra.] The consideration for the note was not only the transfer of the title to the land, but also an abstract showing such title, and plaintiff having failed in each of these respects, there is no ground upon which a recovery can be justified.

In order to make clearly appear a distinct point made by plaintiff, we will say, that the record shows that he, in addition to the farm for which defendant was to pay $9600, "threw in" the deal, or purchase, two mules, and no statement was made of it in the written contract. That is to say, plaintiff sold and delivered the farm and two mules to defendant for that lump price. These mules were then put into the chattel mortgage by defendant, with other property, and they were taken by the plaintiff in the replevin action. He now insists that the mules are his property and he should, at all events, be allowed to recover them. This claim is based upon the idea that the mules and the farm were sold to defendant for a total consideration of $9600, and that since that contract of purchase has

come to naught and has been, for all practical purposes, abandoned and he has taken possession of the farm, he is entitled to the mules; otherwise defendant will have them without price.

The effect of our opinion is not to say that defendant is the owner of the mules. But plaintiff cannot recover them in this action for the reason that the cause was tried upon the theory that his right to them was based upon defendant's general ownership and his lien which entitled him to possession by virtue of the chattel mortgage. No other case was tried; no other theory advanced.

Again, at the institution of this action plaintiff was in the wrong, and was not, at that time, entitled to the possession of the mules and he must fail on that account; since it was necessary to his case that he have a right to the possession when he brought his suit. He should not be allowed to have an officer seize property and deliver to him when he, at that time, had no right to it. [Wells on Replevin, secs. 94, 107; Cobbey on Replevin, secs. 96, 97; Shinn on Replevin, secs. 31, 604.] A party cannot "create a cause of action after the institution of the suit." [Pilkington v. Trigg, 28 Mo. 95, 99.]

It may be that if plaintiff had tested his right to the mules on the ground that the purchase of the farm and mules had been abandoned by defendant and was at an end, it would have disentitled defendant to an order for the return of the mules to him. For it appears to be reasonable that, notwithstanding plaintiff must suffer defeat for bringing his action before he is entitled to possession, yet, if by the occurrence of matters since brought in his action, he becomes entitled to possession, defendant, although prevailing in the case, ought not to have an order returning the property to him. [Ingraham v. Martin, 15 Maine 373; Barney v. Brannan, 51 Conn. 175.] But, as already stated, the

case was not heard at the trial in that way.   Plaintiff's case was tried exclusively on the theory of his right to the possession when he brought his action.

We will reverse both judgments. The other judges concur.